NORTHERN PAC. RY. CO. v. BALTHAZAR et al.

(Circuit Court, D. Washington, W. D. August 14, 1897.)

PUBLIC LANDS—GRANTS TO NORTHERN PACIFIC RAILROAD COMPANY—FORFEIT-URE.

The Northern Pacific Railroad Company not having definitely located any line of road between Portland and Wallula, the original grant of lands to it by Act July 2, 1864 (13 Stat. 365, § 3), never took effect as to lands between those points; and those of such lands lying contiguous to the line built from Portland to Tacoma, and within the limits of the grant made by the joint resolution of May 31, 1870 (16 Stat. 378), were embraced within the latter grant, and on compliance with its conditions the title thereto vested in the company and its grantees, and was not affected by the forfeiture act of September 29, 1890 (26 Stat. 496).

F. M. Dudley, for complainant.
C. E. S. Wood, for defendants.

HANFORD, District Judge. This suit was originally commenced by the receiver of the Northern Pacific Railroad Company, in behalf of said company, to quiet title and determine questions as to the rights of the company, under its land grant, to certain lands, aggregating about 200,000 acres, situated in the counties of Clark and Cowlitz, in the state of Washington, which the company claims to have earned by the construction of that part of its road extending from Portland to Tacoma. Said lands were sold in tracts by the railroad company, and a large number of its vendees were made parties defendant, for the purpose of obtaining a decree restraining them from commencing actions to recover the purchase money paid to the company. The Northern Pacific Railway Company has been substituted as party plaintiff, it having succeeded to all the rights of the Northern Pacific Railroad Company and its receiver, by having purchased the railroad, with its lands and business, at the foreclosure sale. The controversy as to the title grows out of the act of congress of September 29, 1890, forfeiting that portion of the land grant coterminous with the line of the Northern Pacific Railroad between Portland and Wallula, through the valley of the Columbia river, which its charter authorized the company to construct.

In order to understand the questions submitted, it is necessary to consider the following acts and resolution of congress: By the act of July 2, 1864 (13 Stat. 365), the Northern Pacific Railroad Company, was created a body corporate, and said company was authorized to construct—

"A continuous railroad and telegraph line, with the appurtenances. namely, beginning at a point on Lake Superior, in the state of Minnesota or Wisconsin;

thence westerly by the most eligible railroad route, as shall be determined by said company, within the territory of the United States, on a line north of the forty-fifth degree of latitude to some point on Puget Sound, with a branch via the valley of the Columbia river to a point at or near Portland, in the state of Oregon, leaving the main trunk line at the most suitable place, not more than three hundred miles from its western terminus."

And section 3 of the act provides:

"That there be, and hereby is, granted to the 'Northern Pacific Railroad Company,' its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific coast, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores over the route of said line of railway, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt, through the territories of the United States, and ten alternate sections of land per mile on each side of said railroad whenever it passes through any state, and whenever on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the general land office; and whenever, prior to said time, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the secretary of the interior, in alternate sections and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections."

And by a joint resolution of May 31, 1870 (16 Stat. 378), it is provided that the company may—

"Locate and construct under the provisions and with the privileges, grants, and duties provided for in its act of incorporation, its main road to some point on Puget Sound, via the valley of the Columbia river, with the right to locate and construct its branch from some convenient point on its main trunk line across the Cascade Mountains to Puget Sound; and in the event of there not being in any state or territory in which said main line or branch may be located, at the time of the final location thereof, the amount of lands per mile granted by congress to said company, within the limits prescribed by its charter, then said company shall be entitled, under the directions of the secretary of the interior, to receive so many sections of land belonging to the United States, and designated by odd numbers, in such state or territory, within ten miles on each side of the said road beyond the limits prescribed in said charter, as will make up such deficiency, on said main line or branch, except mineral and other lands as excepted in the charter of said company of eighteen hundred and sixty-four, to the amount of the lands that have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of subsequent to the passage of the act of July two, eighteen hundred and sixty-four."

The act of September 29, 1890 (26 Stat. 496), forfeiting unearned land grants, provides:

"That there is hereby forfeited to the United States, and the United States hereby resumes the title thereto, all lands heretofore granted to any state or any corporation to aid in the construction of a railroad opposite and coterminous with the portion of any such railroad not now completed and in operation, for the construction or benefit of which such lands were granted; and all such lands are declared to be a part of the public domain."

The argument of the defendants is based upon the decision of the supreme court in the case of U. S. v. Northern Pac. R. Co., 152 U. S. 284–300, 14 Sup. Ct. 598, in which it was held that by the original charter of the company no lands were granted to aid in the construc-

tion of a railroad from Portland to Puget Sound, and that the joint resolution of May 31, 1870, made an additional grant for that portion of the road, but in no way affected lands which had been previous to that date granted to another company; and the argument assumes that the lands in controversy were granted to the Northern Pacific Railroad Company by the act of July 2, 1864, and therefore were not affected by the joint resolution of May 31, 1870; in other words, that it is not to be presumed that congress intended to make two distinct grants of the same lands. And it is further assumed that, as the company failed to earn the lands in controversy by compliance with the conditions of the original grant, the title has reverted to the United States by force of the forfeiting act of September 29, 1890, notwithstanding the fact that the lands are within the limits of the grant as extended by the joint resolution of May 31, 1870, and contiguous to the railroad from Portland to Tacoma, which has been completed. I am constrained, however, by the decisions of the circuit court of appeals for this circuit in the cases of Oregon & C. R. Co. v. U. S., 23 C. C. A. 15, 77 Fed. 67–82, and Land Co. v. Wilcox, 25 C. C. A. 164, 79 Fed. 719, to hold that, as the Northern Pacific Railroad Company never made a definite location of any line of road between Portland and Wallula, the original land grant never took effect as to any land between said places; therefore the lands in controversy were, for aught that appears to the contrary, at the date of the joint resolution of May 31, 1870, and at the time of the definite location of the railroad from Portland to Tacoma, nonmineral public lands of the United States, not reserved, sold, granted, or otherwise appropriated, and by said joint resolution the same were granted to the company upon conditions which have been performed, so that the title of the company and its vendees has become vested and perfect. Upon the authority of the cases last cited, the demurrer to the bill of complaint is overruled.